# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CRIMINAL ACTION** |
| **v.** | ) | **No. 07-20145-01-KHV** |
| | ) | |
| **PABLO RENE BUCIO,** | ) | **CIVIL ACTION** |
| | ) | **No. 11-2071-KHV** |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On December 1, 2008, the day trial was scheduled to begin, defendant pled guilty without a plea agreement. Specifically, he entered a plea of guilty to conspiracy to distribute marijuana, attempt to manufacture and distribute marijuana, being a controlled substance user in possession of a firearm, maintaining a residence for the purpose of storing, using, manufacturing and distributing marijuana and possession with intent to distribute marijuana. Later that same day, with a written plea agreement, defendant pled guilty to conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine. On July 28, 2009, the Court sentenced defendant to 327 months in prison. This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #179) filed February 7, 2011. On July 7, 2011, the Court overruled Plaintiff's Motion To Enforce Waiver Of Collateral Attack (Doc. #184) and directed the parties to brief defendant's motion on the merits. For reasons stated below, the Court overrules defendant's motion.

## Analysis

Liberally construed, defendant's Section 2255 motion asserts that his conviction should be vacated based on ineffective assistance of counsel by his first attorney, Carl Cornwell, and his

second attorney, David Kelly.  In particular, defendant asserts that Mr. Cornwell was ineffective because he told defendant that if he had misinformed him about (1) how the sentencing guideline on relevant conduct, U.S.S.G. § 1B1.3, applied in defendant's case or (2) defendant's eligibility for the Residential Drug Abuse Program ("RDAP"), defendant could have his plea vacated under <u>United States v. Cockerham</u>, 237 F.3d 1179, 1181 (10th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1085 (2002). <u>Motion Under 28 U.S.C. § 2255</u> (Doc. #179) at 20, 25.  Defendant also claims that Mr. Cornwell was ineffective because he did not tell defendant that Calvin Jensen's statement to police on October 4, 2007 did not mention defendant.  <u>Id.</u> at 20, 25-27.  Defendant asserts that Mr. Kelly was ineffective because (1) he did not file a motion to withdraw the guilty plea before sentencing based on ineffective assistance by Mr. Cornwell and (2) at or after sentencing, he did not object that the Court had failed to make certain findings to support defendant's sentence of 327 months.  <u>Id.</u> at 27-30.

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984).  To meet the first element, <u>i.e.</u> counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u> at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness."  <u>United States v. Walling</u>, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Strickland</u>, 466 U.S. at

689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988), cert. denied, 489 U.S. 1089 (1989). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

## I.    Claims Of Ineffective Assistance Of Counsel By Mr. Cornwell

### A.    Advice About Availability Of Section 2255 Motion

Defendant claims that Mr. Cornwell was ineffective because he told defendant that if he had misinformed defendant about (1) the sentencing guideline on relevant conduct, U.S.S.G. § 1B1.3 or (2) defendant's eligibility for RDAP, defendant could have his plea vacated under Cockerham based on ineffective assistance of counsel. Motion Under 28 U.S.C. § 2255 (Doc. #179) at 20, 25. Even if the Court assumes that counsel's performance was deficient in this regard, defendant has not alleged sufficient facts to establish prejudice.

To show prejudice in the guilty plea context, defendant must show a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); Miller v. Champion, 262 F.3d 1066, 1068-69 (10th Cir. 2001). As part of his proof, defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). Here, defendant's assertion that but for counsel's errors, he would have insisted on trial is necessary, but ultimately insufficient to entitle him to relief. Miller, 262 F.3d at 1072; United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993). The Court evaluates the factual circumstances surrounding the plea to predict "whether the outcome of the district court

proceedings would have been different if his counsel had not committed the alleged errors." Clingman, 288 F.3d at 1186; see Miller, 262 F.3d at 1072 (court examines factual circumstances surrounding plea to determine whether petitioner would have proceeded to trial).  While defendant need not show that he would have prevailed at trial, his prospects of succeeding inform the Court's view whether he in fact would have gone to trial absent the alleged errors.  United States v. Triplett, 263 Fed. Appx. 688, 690 (10th Cir. 2008); see Clingman, 288 F.3d at 1186.  The strength of the government's case is often the best evidence of whether defendant in fact would have changed his plea and insisted on going to trial.  See Hill, 474 U.S. at 59-60.

Here, the alleged error by Mr. Cornwell is the accuracy of his advice about the availability of a remedy under Section 2255, not the accuracy of his advice on relevant conduct and RDAP eligibility.  Defendant does not allege that but for counsel's advice about the availability of a remedy to vacate his plea under Section 2255, he would have insisted on going to trial.  Furthermore, the record does not reflect a viable defense to any of the charges.  In the plea agreement, defendant acknowledged that he distributed methamphetamine and collected drug payments on prior transactions when his brother (Alberto Bucio) and his father (Pablo Ruben Bucio) traveled to Mexico to arrange additional shipments of controlled substances.  Plea Agreement ¶ 3, attached to Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #92) filed December 1, 2008. In addition to defendant's admission that he distributed a large quantity of methamphetamine,[1] Calvin

---

[1]        In the plea agreement, defendant admitted that in April or May of 2007, he distributed eight ounces of methamphetamine to Calvin Jensen in exchange for some $10,000.  Plea Agreement ¶ 3.  Jensen and defendant met at 614 Orient Drive, where defendant's parents resided in Kansas City, Kansas, to conduct the transaction.  In July of 2007, defendant distributed one pound of methamphetamine to Jensen from the same residence for some $11,000.  In September of 2007, defendant distributed one pound of methamphetamine to Jensen from defendant's residence at 238

(continued...)

Jensen implicated defendant as the head of drug distribution activities when defendant's brother and father traveled to Mexico on various occasions. Based on monitored telephone calls between Jensen and Alberto Bucio and separate calls between Jensen and defendant, law enforcement confirmed that when Alberto Bucio and defendant's father were absent, defendant acted as the local leader of the drug distribution organization. Officers executed a search warrant at defendant's residence at 238 North 20th Street and discovered many items which confirmed defendant's illegal drug distribution activities and possession of firearms.[2] Finally, officers executed a search warrant at 614 Orient Drive (where defendant's parents resided) and found some $27,000 in United States currency, seven vacuum-sealed one pound bags containing methamphetamine, various firearms and digital scales.[3] In light of this overwhelming evidence of defendant's guilt, defendant has not shown that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485; see Agyepong v. United States, No. 07-cr-178-2, 2011 WL 627361, at *4 (M.D.N.C. Feb. 11, 2011) (given evidence against him and lack of remotely credible innocent explanation, no

_____

[1](...continued)
North 20th Street in Kansas City, Kansas. Defendant conceded that he conducted all of these transactions on behalf of his brother who was in Mexico to coordinate additional shipments of controlled substances. In two separate interviews with Special Agent Christy Weidner, Task Force Officer Eric McCallister, Special Agent Michael Johnson and government counsel, defendant also confessed that he was a participant in the drug trafficking conspiracy. See Response To Defendant's Motion To Withdraw Plea Of Guilty (Doc. #142) at 5

[2]      Officers discovered wire transfer documents belonging to defendant, Paula Verrinder (who also lived at the residence) and Alberto Bucio. Officers also discovered a built-in room in the basement which contained equipment for an indoor hydroponic marijuana growing operation, three bags of marijuana, digital scales, two rifles, two pistols, $6,835 in United States currency, hydroponic marijuana growing equipment, thousands of rounds of ammunition in various calibers, magazines about indoor marijuana growing, 36 pounds of baking soda and documents which showed that Verrinder and defendant were associated with the residence at 238 North 20th Street.

[3]      Defendant's sister, Claudia Bucio, admitted that defendant supplied her with marijuana at no charge.

rational defendant would have proceeded to trial).  The Court therefore overrules defendant's claim that Mr. Cornwell was ineffective in advising that if he had misinformed defendant about (1) the sentencing guideline on relevant conduct, U.S.S.G. § 1B1.3, or (2) defendant's eligibility for RDAP, defendant could have his plea vacated under Cockerham.

As part of his claim that Mr. Cornwell gave inaccurate advice about the availability of Section 2255 relief, defendant argues that the undersigned judge never informed him that her application of Guideline Sections 1B1.3 and 2D1.1 could differ from his counsel's prediction of how those same provisions would apply.  Motion Under 28 U.S.C. § 2255 (Doc. #179) at 27; Defendant's Traverse (Doc. #197) at 4; Pablo Bucio Declaration Dated February 2, 2011 at 4.  Defendant's argument is frivolous and conclusively refuted by his statements at two separate plea colloquies.[4]

---

[4]      Defendant acknowledged that counsel's estimate of his sentence could be incorrect:

THE  COURT:  And  until  we're  completely  through  [with  the  presentence investigation] process, no one is in a position to tell you for certain what kind of sentence you're looking at under the guidelines?

THE DEFENDANT: Yes, ma'am.

THE COURT: And even though your attorney has many years of experience working with the guidelines and obviously is very familiar with your case, he can't look into the future and so he doesn't know what's going to turn up [i]n the investigation, he doesn't know how the Court's going to rule on issues at the time of your sentence, or anything else which is going to happen in the future.

THE DEFENDANT: Yes, ma'am.

THE COURT: And so when he tells you what kind of sentence he thinks you're looking at under the guidelines, he basically is making predictions or assumptions based on his expertise and his knowledge of your case, but that nothing -- well, I guess you could say he's making educated guesses about what's going to happen in the future.

(continued...)

[4](...continued)
THE DEFENDANT: Yes.

THE COURT: And do you realize that, through no fault of his, it could turn out that some of those predictions or assumptions are incorrect?

THE DEFENDANT: Yes, ma'am.

THE COURT: And if that should happen, then that could have a dramatic effect on the kind of sentence that you're actually looking at under the guidelines.

THE DEFENDANT: Yes, ma'am.  * * * *

THE COURT: I will also take into account what we call all relevant criminal conduct.

THE DEFENDANT: Yes, ma'am.

THE COURT: And this might include other crimes you may have committed even though you may not formally have been prosecuted and convicted of those other crimes and even though you may claim that you're innocent of those other crimes.

THE DEFENDANT: Yes, ma'am.

THE COURT: So I will look at all of the information which comes to the Court's attention, and if I find that you've committed other crimes which relate to this case, I will take those into account in fixing your sentence on Counts 4, 5, 7, 8, and 9.

THE DEFENDANT: Yes, ma'am.

THE COURT: And even though you may be very unhappy with what happens at the time of sentencing, that does not mean that you'll be able to come back to court and withdraw your plea and go to trial.

THE DEFENDANT: Yes, ma'am.  * * * *

THE COURT: I explained to you this morning what the process would be, if the Court accepts your guilty plea, that we would do a presentence investigation report and have a hearing on any objections.  Do you understand that when Mr. Cornwell tells you that he expects your guideline sentence would be not less than ten years,

(continued...)

---

[4](...continued)
looking at the case as a whole, that, again, he can't look into the future and know what's going to happen and he's just giving you that advice based on his professional experience and expertise and familiarity with your case, but there may be future developments which could affect that.

THE DEFENDANT: Yes, ma'am.

THE COURT: And if any of his predictions or assumptions about future events turn out to be incorrect, that could have a big effect on the kind of sentence you're actually looking at.

THE DEFENDANT: Yes, ma'am.  * * * *

THE COURT: And do you understand that if I look at these factors and then decide that a sentence other than what the guidelines call for is more appropriate, I can give you a sentence which is either higher or lower than the sentencing guidelines so long as I don't go beneath the mandatory statutory minimum?

THE DEFENDANT: Yes, ma'am.  * * * *

[AUSA:] The parties have agreed to the application of the guidelines and therefore both the United States and the defendant understand that the conduct charged in any dismissed counts of the Indictment is to be considered as well as all other uncharged related criminal activity as relevant conduct for purposes of calculating the offense level for Count 1.* * * *

THE COURT: Basically, unless I give you a sentence which is higher than what the sentencing guidelines call for, you would not have any legal recourse -- any rights to challenge any decisions that this Court might have made by filing an appeal to the Court of Appeals or filing some separate lawsuit to try and get my decision set aside.

THE DEFENDANT: Yes, ma'am.

THE COURT: One thing this means, if you ask me to give you a sentence lower than what the guidelines say and I deny your request, you're basically stuck with that decision because you won't be able to appeal it or file another lawsuit to try and get that decision changed.

THE DEFENDANT: Yes, ma'am.

(continued...)

-8-

Defendant apparently argues that he has a valid claim for ineffective assistance of counsel because Mr. Cornwell's "information regarding [U.S.S.G.] §§ 1B1.3 and 2D1.1 turned out to be incorrect."   Traverse (Doc. #197) at 4.  Defendant fully understood that he was subject to a maximum sentence of life in prison, that counsel's predictions and assumptions could be wrong and that any such errors could have a "dramatic effect" on his sentence.  Transcript Of Change Of Plea (Doc. #155) at 6-7, 24; see Transcript Of Change Plea (Doc. #156) at 16 (incorrect predictions or assumptions by counsel could have big effect on actual sentence).  A large part of the Court's standard plea colloquy assumes that counsel will sometimes fail to correctly predict a defendant's sentence.  Defendants sometimes receive less time than counsel predict, sometimes more.  An attorney miscalculation or erroneous sentence estimate by itself does not establish constitutionally deficient performance.  United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); see United States v. Melcher, No. 10-504, 2010 WL 1971913, at *2 (10th Cir. May 18, 2010) (performance not deficient; prediction of 200 months, sentence of life in prison); United States v. Harrison, No. 09-7113, 2010 WL 1225617, at *4 (10th Cir. Mar. 31, 2010) (same; prediction of 37 months, sentence of 70 months); see also United States v. Herrera, 289 Fed. Appx. 302, 304-05 (10th Cir. 2008) (erroneous estimate not deficient where defendant recognized that he faced potential life sentence and plea agreement stated that final sentence was solely in court's discretion).  In addition, defendant cannot establish prejudice.  In his reply brief, defendant states that he entered into a plea agreement because of "Attorney Cornwell's misinformation based on his failure to understand the mechanics of U.S.S.G. §§ 1B1.3 and 2D1.1."  Traverse (Doc. #197) at 11 n.7.  But after being informed about

---

[4](...continued)
Transcript Of Change Of Plea (Doc. #155) at 23-24, 28-29; Transcript Of Change Of Plea (Doc. #156) at 15-19, 22-23.

the statutory maximum and the fact that counsel's prediction could be wrong, defendant pled guilty. See United States v. Kutilek, 260 Fed. Appx. 139, 147 (10th Cir. 2008) (no prejudice from attorney miscalculation in light of judge's statements at plea hearing); United States v. Hamilton, 510 F.3d 1209, 1216 (10th Cir. 2007) (same), cert. denied, 552 U.S. 1331 (2008); United States v. Shedrick, 493 F.3d 292, 299-300 (3d Cir. 2007) (same); Gordon, 4 F.3d at 1571 (same); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) (same), cert. denied, 499 U.S. 940 (1991); United States v. Cruce, No. 97-3167-DES, 1997 WL 557382, at *2 (D. Kan. Aug. 14, 1997) (same; prediction of 36-47 months, sentence of 168 months); United States v. Marsh, 733 F. Supp. 90, 93 (D. Kan. 1990) (same; prediction of three years, sentence of nine years).  Accordingly, defendant was not prejudiced by counsel's inaccurate prediction of how the guidelines would apply in his case.

> B.  Failure To Inform Defendant About Details Of Jensen's Initial Statement

Defendant also claims that Mr. Cornwell was ineffective because he did not tell defendant that Calvin Jensen's statement to police on October 4, 2007 did not mention defendant.  Motion Under 28 U.S.C. § 2255 (Doc. #179) at 20, 25-27.  Jensen testified at the sentencing hearing.  At sentencing, Mr. Kelly tried to impeach Jensen because some of Jensen's prior statements did not include detail about defendant's involvement.  Even so, Jensen testified as to several purchases of half pound or pound quantities of methamphetamine from defendant.  Jensen also testified that defendant took care of the local drug business when defendant's brother and father went to Mexico. Transcript Of Sentencing (Doc. #159) at 24.  Counsel's alleged failure to advise defendant of the details of Jensen's statements was not deficient.  In addition, for reasons stated above, defendant cannot show prejudice on such a claim because he has not alleged or shown that if counsel had advised him of the details of Jensen's statement on October 4, 2007, he would have insisted on going to trial in light of the evidence against him.  Because defendant has not alleged facts which show

-10-

that Mr. Cornwell's failure to advise him of the details of Jensen's statement on October 4, 2007 was deficient or prejudicial, the Court overrules this claim.

**II.    Claims Of Ineffective Assistance Of Counsel By Mr. Kelly**

      A.      Failure To File A Motion To Withdraw Guilty Plea

Defendant claims that Mr. Kelly was ineffective because before sentencing, he did not file a motion to withdraw the guilty plea based on ineffective assistance of counsel by Mr. Cornwell. As explained above, defendant has not shown that Mr. Cornwell rendered ineffective assistance. In any event, Mr. Kelly did file a motion to withdraw the guilty plea before sentencing.  See Defendant Pablo Bucio's Motion To Withdraw Guilty Plea (Doc. #140) filed July 21, 2009.  The motion noted that defendant asserted his innocence and that the only reason he had pled guilty was that Mr. Cornwell coerced him into doing so.  See id. ¶¶ 4, 6, 9.  The motion refers extensively to a pro se attachment and defendant's pro se Notice In Negative-Averment Of Plea Agreement (Doc. #113) filed April 6, 2009.  Both of those documents explained that defendant wanted to withdraw his guilty plea because Mr. Cornwell – who gave inaccurate advice – coerced him to plead guilty. In his reply, defendant argues that Mr. Kelly was ineffective because in the motion to withdraw the guilty plea, he did not specifically assert that Mr. Cornwell was ineffective because he had failed to explain the mechanics of U.S.S.G. §§ 1B1.3 and 2D1.1.  See Traverse (Doc. #197) at 5.  Mr. Kelly did argue that defendant "was ignorant of the range of punishment that he was facing in making his plea." Defendant Pablo Bucio's Motion To Withdraw Guilty Plea (Doc. #140) ¶ 9.  Mr. Kelly adequately raised the issue of ineffective assistance of counsel by Mr. Cornwell.  Accordingly, Mr. Kelly's performance related to the motion to withdraw defendant's guilty plea was not deficient.

Even if Mr. Kelly had rendered deficient performance in this regard, defendant has not alleged facts which would establish prejudice, i.e. that the result of the proceeding would have been

different.  In particular, even if Mr. Kelly had more specifically stated that the basis of defendant's

claim was that Mr. Cornwell did not explain the mechanics of U.S.S.G. §§ 1B1.3 and 2D1.1, the

Court would have reached the same result on the motion to withdraw guilty plea.  In ruling on the

motion to withdraw, the Court noted as follows:

> I suppose I could take another look at this if the defendant wanted to testify and I could consider his veracity and so forth.  But when I look at the record here and when I look at how thorough of a plea colloquy we did, the stated reasons for withdrawing this plea are simply not credible.
>
> It is not credible to me that Mr. Cornwell coerced the defendant into making this guilty plea.  It seems to me impossible that [defendant] was ignorant of the range of punishment that he was facing.  There's nothing at all that appeared at the time of the plea which would suggest that the plea was anything less than knowing and voluntary.
>
> Basically, I don't see any reason to spend much time on this because I would adopt in its entirety the government's response to withdraw the guilty plea.

Transcript Of Sentencing (Doc. #159) at 7-8.  In light of the Court's comments, defendant has not

shown that if Mr. Kelly had more persuasively argued the motion to withdraw, the result of the

proceeding likely would have been different.

In sum, defendant has not shown that Mr. Kelly's performance on the motion to withdraw

guilty plea was deficient or prejudicial.  The Court therefore overrules defendant's claim.

> B.     Failure To Object To Sentence

Defendant claims that Mr. Kelly was ineffective because at or after sentencing, he did not

object that the Court had failed to make certain findings to support a sentence of 327 months.

Defendant's claim is procedurally barred by the waiver of collateral challenges in the plea

agreement.

A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a

sentence is generally enforceable.  United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir.

-12-

2003); Cockerham, 237 F.3d at 1181; United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998). The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement. United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004); Hahn, 359 F.3d at 1328. The Court construes the plea agreement according to contract principles and based on what defendant reasonably understood when he entered the plea. United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

The plea agreement states in relevant part as follows:

**14.    Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein (including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release). The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion under Fed. Rule of Civ. Pro. 60(b). In other words, the defendant waives the right to appeal the sentence imposed except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by Title 18, U.S.C. § 3742(a).

-13-

Plea Agreement ¶ 14, attached to <u>Petition To Enter Plea Of Guilty And Order Entering Plea</u> (Doc. #92) filed December 1, 2008.  The scope of this waiver unambiguously includes the right to collaterally attack by a Section 2255 motion any matter in connection with defendant's prosecution, conviction or sentence.  In <u>Cockerham</u>, the Tenth Circuit noted that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver," but that "collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."  237 F.3d at 1187.

Here, except as limited by <u>Cockerham</u>, <u>i.e.</u> except for claims challenging the validity of the plea or waiver, defendant specifically waived his right to raise any collateral challenge in connection with his prosecution, conviction and sentence.  Because defendant's claim that Mr. Kelly failed to object to defendant's sentence at or after sentencing does not challenge the validity of the plea or waiver, it falls within the scope of the waiver in the plea agreement.  See <u>Cockerham</u>, 237 F.3d at 1187.

To ascertain whether defendant knowingly and voluntarily waived his rights, the Court evaluates the language of the plea agreement and the plea petition, and the Rule 11 colloquy.  <u>Hahn</u>, 359 F.3d at 1325.  The Court conducted a thorough inquiry at the plea hearing.  At that time defendant affirmed that he understood the charge against him, the maximum prison term of life, the rights which he was waiving and the factual basis for his plea.  Defendant acknowledged that he understood the waiver of appeal and collateral challenges, that his plea was free and voluntary, that no one had forced or threatened him to enter it and that the only reason he was making a plea was that he was in fact guilty as charged.  Nothing in the record suggests that defendant's plea or waiver of post-conviction rights was unknowing or involuntary.  In sum, the language of the plea agreement

and the Rule 11 colloquy established that defendant's waiver of his rights was knowing and voluntary.

The Court must "determine whether enforcing the waiver will result in a miscarriage of justice." Id. at 1327. This test is not met unless (1) the district court relied on an impermissible factor such as race; (2) defendant received ineffective assistance of counsel in conjunction with negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity or public reputation of judicial proceedings. Id. Defendant bears the burden of demonstrating that the waiver results in a miscarriage of justice. Anderson, 374 F.3d at 959.

The Court finds that enforcement of the waiver does not implicate any of the four factors listed above. In particular, defendant received a sentence of 327 months in prison, which is within the applicable guideline range and less than the statutory maximum of life in prison. See United States v. Green, 405 F.3d 1180, 1193-94 (10th Cir. 2005); United States v. Porter, 405 F.3d 1136, 1144 (10th Cir.) ("statutory maximum" under Hahn refers to statute of conviction), cert. denied, 546 U.S. 980 (2005). Furthermore, enforcement of the waiver as to collateral challenges does not seriously affect the fairness, integrity or public reputation of the proceedings. See United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir.) (waiver of appellate rights enforced where sentence did not exceed statutory maximum and was based on judge-made findings), cert. denied, 546 U.S. 989 (2005). The Court finds that enforcing the waiver as to defendant's claim related to sentencing objections will not result in a miscarriage of justice.[5]

---

[5]     Defendant's claim also lacks substantive merit. Mr. Kelly raised several objections before and at sentencing. He also examined Jensen about purported inconsistencies in his statements about defendant's involvement. Counsel's performance at sentencing certainly was within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Even if Mr. Kelly
(continued...)

## III.    Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief.

Moreover, defendant does not allege specific and particularized facts which are not directly refuted

by the record or if true, would entitle him to relief.  Accordingly, no evidentiary hearing is required.

See 28 U.S.C. § 2255; United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir.

Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory

allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no

hearing required where factual matters raised by Section 2255 petition may be resolved on record);

United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless

"petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened

by record).

---

[5](...continued)
somehow was deficient in failing to raise objections at or after sentencing, defendant has not shown
a reasonable probability that had counsel presented additional objections or raised them differently,
the Court would have imposed a different sentence.  See United States v. Hemsley, 287 Fed. Appx.
649, 650 (10th Cir. 2008); United States v. Rantz, 862 F.2d 808, 810-11 (10th Cir. 1988).  On
appeal, the Tenth Circuit noted as follows:

> The district court found that Mr. Bucio was responsible for the distribution of at least
> 1.5 kilograms of methamphetamine.  We have carefully read all testimony relating
> to methamphetamine transactions involving Mr. Bucio, and there is ample evidence
> supporting the drug quantities calculated by the district court.

Order And Judgment (Doc. #178) filed June 2, 2010 at 13.  Absent further testimony, the Court
cannot envision how Mr. Kelly could have obtained a different result at sentencing. Except for drug
quantity, defendant does not explain any basis for an objection.  As to the overall sentence, the
district court has a wide range of discretion in striking a balance among the various factors under
Section 3553(a).  United States v. Gambino-Zavala, 539 F.3d 1221, 1232 (10th Cir. 2008).  Absent
an abuse of discretion, the Tenth Circuit defers to the balance struck by a district court as to these
factors.  United States v. Sells, 541 F.3d 1227, 1239 (10th Cir. 2008); see United States v. Smart,
518 F.3d 800, 808 (10th Cir. 2008).  Defendant has not adequately alleged facts which establish
prejudice from Mr. Kelly's performance related to sentencing objections.

#### IV.    Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).[6]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)).  For reasons stated above, the Court finds that defendant has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #179) filed February 7, 2011 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** as to the Court's ruling on defendant's motion under 28 U .S.C. § 2255.

Dated this 8th day of December, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6]    The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).